UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ELIAS MENDOZA PEREZ,<br><br>Defendant. | Case No.  1:15-MJ-0074 SKO<br><br>**CERTIFICATION OF EXTRADITABILITY AND ORDER OF COMMITTMENT** |

This is an extradition proceeding pursuant to 18 U.S.C. § 3184.  The Government of ("Mexico") has requested the United States Government extradite Elias Mendoza Perez ("Mendoza Perez"), a fugitive from Mexico"s justice for the crime of homicide.  The extradition request is based upon a 1978 Treaty between the United States and Mexico, which was signed at Mexico City on May 4, 1978, and entered into force on January 25, 1980 ("Treaty").

**INTRODUCTION**

On May 15, 2015, a complaint for the provisional arrest of Mendoza Perez was filed by the United States Government. (Doc. 1.)  Acting on the complaint, this Court issued a warrant on May 15, 2015 for the provisional arrest of Mendoza Perez under 18 U.S.C. § 3184.  Mendoza Perez was arrested on the provisional warrant on May 27, 2015. (Doc. 15.)  Mendoza Perez was arraigned and appointed counsel by Magistrate Judge Gary S. Austin on May 28, 2015 and ordered detained.

Extradition proceedings were scheduled by the parties. By stipulation of the parties, the Court set a briefing schedule for filing of briefs in support of and in opposition to extradition. On January 19, 2016, the Government filed a brief in support of extradition, along with supporting exhibits. (Doc. 30.) Also on January 19, 2016, Mendoza Perez filed a memorandum and declaration in opposition to extradition. (Doc. 28-29.) An extradition hearing was held on February 29, 2016. The government was represented by AUSA Daniel Griffen. Defendant Mendoza Perez was present, being assisted by the Spanish language interpreter, and represented by counsel Zepure Attashian.

Based upon all the filings and evidence presented, the Court finds that Elias Mendoza Perez is extraditable to Mexico for the offense requested, homicide, and certifies this finding to His Excellency John F. Kerry, Secretary of State, as required under 18 U.S.C. § 3184.

## STANDARD FOR CERTIFICATION OF EXTRADITABILITY

To obtain a certification of extraditability on behalf of a requesting state, the United States has the burden of demonstrating each of the following elements: (1) the court possesses subject matter jurisdiction to conduct extradition proceedings; (2) the court possesses personal jurisdiction over the person named in the extradition request; (3) a valid extradition treaty exists between the requesting state and the United States, which is, at all relevant times has been, in full force and effect; (4) the person named in the extradition request is charged with having committed a criminal offense within the jurisdiction of the requesting state and the charged offense is extraditable under the relevant extradition treaty (that is, the offense charged falls within the terms of the relevant extradition treaty); (5) there is competent evidence establishing probable cause to believe that the person named in the extradition request committed the charged offense, and (6) the person named in the extradition request is the person arrested and brought before the court. See 18 U.S.C. § 3184, 3190; *Manta v. Chertoff*, 518 F.3d 1134, 1140 (9th Cir. 2008). "Extradition treaties are to be liberally construed so as to effect their purpose, that is, to surrender fugitives for trial for their alleged offenses." *Valentine v. United States ex rel. Neidecker*, 299 U.S. 5, 14, 57 S.Ct. 100, 81 L.Ed. 5 (1936).

///

**DISCUSSION AND ANALYSIS**

If the Court determines that all the requisite elements have been met, the findings are incorporated into the certificate of extraditability. The certificate is forwarded to the Department of the State. The Secretary of State makes the final decision on whether to surrender the respondent. 18 U.S.C. § 3186.

### 1. Subject Matter Jurisdiction

This Court possesses subject matter jurisdiction to conduct extradition proceedings. Pursuant to 18 U.S.C. § 3184 and Eastern District of California Local Rule 302(b)(8), a Magistrate Judge is authorized to conduct an extradition hearing. Thus, this Court has the authority to conduct an extradition hearing.

### 2. Personal Jurisdiction

The Court must have personal jurisdiction over the person sought to be extradited. Here, Mendoza Perez is in the custody in the Eastern District of California. Therefore, the Court has personal jurisdiction over him.

### 3. Validity of the Treaty between the United States and Mexico

The Court may take judicial notice of the existence of a treaty. *Allen v. Markham*, 156 F.2d 653, 663 (9th Cir. 1946), *rev'd in part on other grounds and aff'd in part sub nom.*, *Clark v. Allen*, 331 U.S. 503, 67 S.Ct. 1431, 91 L.Ed. 1633 (1947).

On February 25, 2016, the Government filed under seal a declaration of Julie B. Martin, an Attorney Advisor in the Office of the Legal Advisor for the Department of State. Ms. Martin's declaration certifies that there is a valid extradition treaty in force between the United States and Mexico. (Declaration of Julie B. Martin, dated March 30, 2015, filed as Doc. 35, ECF pages 2-4 and filed on February 25, 2016.) A copy of the Treaty is attached to Ms. Martin's declaration. The evidence establishes the Treaty is in full force and effect and remains so during the entire time from the date of the underlying offense for which extradition is sought, to the date of this order. Accordingly, the Court takes judicial notice that there is an extradition treaty in full force and effect between the United States and Mexico which was signed at Mexico City on May 4, 1978, and entered into force on January 25, 1980.

### 4. Treaty Coverage

On May 15, 2015, the Government filed the extradition request and accompanying documents, including Arrest Warrant and citations to the applicable Mexican penal codes. (Doc. 1.) These documents indicate that Mexico requests the extradition of Mendoza Perez for the crime of homicide. This offense is punishable under the laws of both Mexico and the United States with a maximum prison sentence of no less than one (1) year, as established by Article 2, paragraph 3 of the Extradition Treaty between Mexico and the United States of America in relation to item 1 of the Treaty"s Appendix. (See Declaration of Julie B. Martin, dated March 30, 2015, filed as ECF Doc. 35 on February 25, 2016 and attached Treaty.)

Article 2 of the Treaty provides that extraditable offenses include "wilful acts which fall within any of the clauses of the Appendix and are punishable in accordance with the laws of both Contracting Parties by deprivation of liberty the maximum of which shall not be less than one year." Treaty, Art. 2 attached as ECF Doc. 35 pages 17-18. Inasmuch as the crime of homicide is punishable by a deprivation of liberty, the maximum of which exceeds one (1) year in both countries, the Treaty covers the crime for which Mendoza Perez is sought to be extradited.

### 5. Probable Cause

A central function of the magistrate judge in an extradition proceeding is not to determine guilt or innocence, but to determine whether probable cause exists to hold the extraditee for trial in the requesting state. *Escobedo v. U.S.*, 623, F.2d 1098, 1102 n. 5 (5th Cir. 1980). A magistrate"s function in making this determination is to ascertain whether there is "any" evidence establishing reasonable or probable cause. *U.S. ex rel Sakaguchi vs. Kaulukukui*, 520 F.2d 726, 730 731 (9th Cir. 1975).

#### a. Evidentiary Standards Determining Probable Cause

The admissibility of evidence in extradition matters is controlled by 18 U.S.C. § 3190 and "the general extradition law of the United States and the provisions of the" Extradition Treaty. *Emami v. U.S. Dist. Ct.*, 834 F.2d 1444, 1450 (9th Cir. 1987); *accord, Oen YinBChoy v. Robinson*, 858 F.2d 1400, 1406 (9th Cir. 1988), *cert. denied*, 490 U.S. 1106. "The authentication requirements for documentary evidence are contained in 18 U.S.C. § 3190, which specifies that

„the certificate of the principal diplomatic or consular officer of the United States resident in such foreign country shall be proof that submitted documents are authenticated in the manner required."" *Barapind v. Enomoto*, 400 F.3d 744, 748 (9th Cir. 2005) (en banc) (per curiam). The Extradition Treaty states that the documents "accompany[ing] the request for extradition, shall be received in evidence when: ... b) In the case of a request emanating from the United Mexican States, they are certified by the principle [sic] diplomatic or consular officer of the United States in Mexico." Extradition Treaty, art. 10, § 6.

The Federal Rules of Evidence do not apply. Fed. R. Evid. 1101(d)(3). The standards for determining whether probable cause is established are the same as those set forth in Rule 5.1 of the Federal Rules of Criminal Procedure. *In re Extradition of Neto*, 1999 WL 627426, at *3 (S.D.N.Y. Aug. 17, 1999). Thus, the Government need only present competent legal evidence to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief in the guilt of the accused.

In determining if probable cause exists, the Court can look to the "totality of circumstances." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). In other words, the Court must simply decide whether the evidence permits a reasonable belief that the person whose extradition is sought committed the crime. *In re Ribaudo*, 2004 WL 213021 at *5 *citing Austin v. Healy*, 5 F. 3d 598, 605 (2nd Cir. 1993), *cert. denied*, 541 U.S. 1165 (1994). This standard looks to whether there is a fair probability of guilt. *Illinois v. Gates*, 462 U.S. at 238. As explained by the Supreme Court in *Illinois v. Gates*, a probable cause or fair probability decision does not trigger an analysis based on finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence. *Illinois v. Gates*, 462 U.S. at 235, 238 239.

Moreover, under 18 U.S.C.§ 3190, hearsay is admissible. *Simmons v. Braun*, 627 F.2d 635, 636 (2nd Cir. 1980). The Court may even rely on unsworn statements of absent witnesses. *Id.* Although caution must be exercised when hearsay is derived from unsworn statements (Extradition of Joseph Ben Dak, 2008 WL 1307816 at *4 (S.D.N.Y. April 11, 2008), the Ninth Circuit has held that even police reports which summarize the statements of witnesses are competent evidence. *Zanazanian v. U.S.*, 729 F.2d 624, 627 628 (9th Cir. 1984).

      b.    <u>Evidence Submitted in Support of Extradition</u>

The United States Government submitted the following evidence relative to probable cause:

- Formal Extradition Request and Certificate of the United States Department of State signed by Ambassador Earl Anthony Wayne. Attached to Ambassador Earl Anthony Wayne"s Certificate (found at ECF Doc. 25, p. 26, 48, 62-69) are documents described, authenticated, and certified by Mexican Prosecutor Gerardo Ruiz Terroba as follows:

- Exh. 1 Arrest Warrant issued dated October 31, 2001, as issued by the Civil and Criminal Trial Judge in Coalcoman, State of Michoacan for Elias Mendoza Perez for the crime of homicide.
- Exh. 2 Certification of public documents by Clerk for Decisions of the Civil and Criminal Trial judge that the statute of limitation runs on September 20, 2022.
- Exh. 3 Text of legal provision on the date and establishing the elements of the crime and penalty.
- Exh. 4 Photograph of Elias Mendoza Perez.
- Exh. 5 Birth Certificate of Elias Mendoza Perez.
- Exh. 6 Statement of witness Abelardo Chavez Perez on September 14, 2001 before the investigation agent.
- Exh. 7 Statement of witness Maria del Carmen Ochoa Vazquez on September 14, 2001 before the investigative agent.
- Exh. 8 Identification proceeding dated August 1, 2012 made by Abelardo Chavez Perez before the investigative agent during which he identified Elias Mendoza Perez.
- Exh. 9 Record of removal of the corpse.
- Exh. 10 Record of the description of wounds in the corpse on September 14, 2001.
- Exh. 11 Autopsy performed on the corpse of Juan Diaz Ramirez on September 14, 2001.

| | |
|---|---|
| 1 | -    Exh. 12 Expert opinion on technical inspection, search and collection of evidence |
| 2 |      on September 19, 2001. |
| 3 | -    Exh. 13 Photographs of the corpse. |
| 4 | -    Unnumbered – above exhibits in the Spanish language (ECF Doc. 36, p. 19-86) |

Julie Martin, an Attorney Advisor in the Office of the Legal Advisor of the U.S. Department of State, provided a declaration authenticating a copy of the diplomatic note by which the extradition request was made and a copy of the Treaty, stating that the Treaty is in force and the offenses for which extradition is demanded are covered by it, and the documents supporting the extradition request are properly certified by the principal American diplomatic or consular officer in Mexico, in accordance with 18 U.S.C. § 3190, so as to enable them to be received in evidence. (Doc. 35.) The declaration from the State Department with its attachments, including a copy of the diplomatic note from Mexico, a copy of the Treaty, and the certified documents submitted in support of the request are attached as ECF Doc. 35 and 36, Government Exhibits 1 to 13.

The Court has reviewed the evidence submitted and receives the documents ECF Doc. 35 and 36, and 1 to 13 into evidence in this matter. These documents comply with the admissibility requirements of 18 U.S.C.§ 3190.

        c.    <u>Factual Support for Probable Cause</u>

The Charge alleges that Mendoza Perez committed homicide in violation of the laws of the Code of Criminal Procedure for the State of Michoacan, Mexico. A brief summary of the facts supporting this Charge, as outlined in the Government"s Exhibits (Exh. 1-13 attached to Doc. 35), is as follows:

On September 14, 2001, Chavez Perez gave statements to the Public Prosecutor. *See* Exh. 6. On September 14, 2001, Chavez Perez was driving his taxi with Juan Diaz Ramirez in the passenger front seat. Mendoza Perez drove his truck around to block the taxi, which forced Chavez Perez to stop. Mendoza Perez got out of his truck, approached the taxi passenger side, raised his shirt and pulled a revolver out. No one else was present at the scene except for Chavez Perez, Diaz Ramirez, and Mendoza Perez. When Chavez Perez saw the gun, he got out of the cab

and started running away. Chavez Perez heard Diaz Ramirez cry out "don't shoot me, don't shoot me" as Chavez Perez ran away. Chavez Perez then heard three gunshots. Moments later he returned to the scene and found the victim dead and Mendoza Perez was gone. Chavez Perez identified Mendoza Perez from a photo line-up as the man who killed Diaz Ramirez. *See* Exh. 8.

This Court has carefully reviewed and considered the Exhibits submitted by the Government and finds there is probable cause that Mendoza Perez committed the crime of homicide. An eyewitness, Chavez Perez, identified Mendoza Perez, through a photographic lineup, as the man who pulled a gun on Diaz Ramirez. Chavez Perez also knew who Mendoza Perez was when he saw him approach the taxi. Chavez Perez left the scene momentarily, but he heard the gunshots. He immediately went back to the scene and found Diaz Ramirez dead. Additionally, Ochoa Vazquez, who was living with Mendoza Perez at the time, gave a statement to the Public Prosecutor that she had a revolver type gun, a .357 Magnum, which belonged to her deceased husband and the same type of gun seen in Mendoza Perez's possession. Mendoza Perez shared a home with her. When she returned home after hearing the news of the man who had been shot, she found that her revolver was gone. Therefore, based upon the totality of the evidence, the Court finds that there is probable cause to believe Mendoza Perez committed the offense for which extradition is sought.

Mendoza Perez attempts to defeat extradition by offering evidence of self-defense. In his declaration (Doc. 29), Mendoza Perez states that the victim in fact approached him with a gun and the Mendoza Perez shot to defend himself. The Court, however, does not consider this evidence. The Ninth Circuit has held that evidence offered by a fugitive to contradict the requesting state's evidence is not admissible in an extradition hearing. *See, e.g., Barapind v. Enomoto*, 400 F.3d 744, 749 50 (9th. Cir 2005). The evidence offered by Mendoza Perez would require this Court to weight conflicting evidence. It may not do so. *Barapind*, 400 F.3d at 749-50.

  **6.**  **Identity of Elias Mendoza Perez**

The complaint and the extradition packet are competent evidence upon which Mendoza Perez's identity may be established. *See, e .g., Glucksman v. Henkel*, 221 U.S. 508, 513, 31 S.Ct.

704 (1911) (finding that photographs of the fugitive provided by the requesting state may be used to make an identity determination in international extradition matters). "Whether the person before the court is the accused is part of the magistrate judge's probable cause analysis." *Manta v. Chertoff*, 518 F.3d 1134, 1140, 1143 (9th Cir. 2008). There must be "competent proof" of identity. *Id.* "[T]he credibility of the reported identification is a matter committed to the magistrate [judge]." *Id.* at 1145 (citation omitted). There is no *per se* rule that specifies which identification procedures are competent for probable cause purposes. *Quinn v. Robinson*, 783 F.2d 776, 815 (9th Cir. 1986), *cert. denied*. 469 U.S. 882 (1986). "An identification based on a single photograph may be competent evidence of identity in an extradition proceeding." *Manta*, 518 F.3d at 1145 (citation omitted).

Mendoza Perez has not contested his identity as the person accused of the crime for which extradition is sought.

### 7. Rule of Non-Inquiry

Lastly, Petitioner argues that to extradite him to Mexico would violate the Convention Against Torture, and that an exception to extradition on humanitarian grounds should apply.[1] Mendoza Perez argues that the Court should create a "humanitarian exception" to extradition. He acknowledges that, while no court has ever denied extradition on a fugitive's anticipated treatment in the requesting country (Doc. 28 p.3:13), the Court should nonetheless deny an otherwise valid extradition. Mendoza Perez argues he fears he will be tortured and killed if returned to Mexico. He submits his declaration in which he states: (1) that he received death threats and saw a suspicious man walk by his business in Mexico in 2001; (2) that his son-in-law was killed in 2012 and his brother was shot in 2013, both in Mexico; and (3) that he believes the Mexican authorities and government "cannot be trusted" based on an unauthenticated news report concerning students who disappeared in Mexico. He believes the decedent, Juan Diaz Ramirez's,

---

[1] The United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, 1465 U.N.T.S. 85, 23 I.L.M. 1027. It was adopted by the United Nations General Assembly in 1984 and is implemented at 8 C.F.R. §1208.16-18. *See* S. Exec. Rep. No. 101 30, at 2 (1990). Article 3 of the Convention provides, in relevant part: "1. No State Party shall expel, return („refouler") or extradite a person to another State where there are substantial grounds for believing that he would be in danger of being subjected to torture." 1465 U.N.T.S. 85 (1988). The Convention entered into force for the United States in November 1994. U.S. Dep't of State, Treaties in Force, 182 (2007); 22 C.F.R. § 95.1(a).

family is at fault for his family member's death.

The Ninth Circuit has "long adhered to the rule of non-inquiry" that it is the role of the Secretary of State, not the courts, to determine whether extradition should be denied on humanitarian grounds or on account of the treatment that the fugitive is likely to receive upon his return to the requesting state. *Prasoprat v. Benov*, 421 F.3d 1009, 1016 (9th Cir. 2005). Indeed, the Ninth Circuit has stated that an extradition magistrate lacks discretion to inquire into the conditions that might await a fugitive upon return to the requesting country. *Id.* It is the Secretary of State who exercises discretion to extradite based upon humanitarian concerns. "The Secretary of State, exercising executive discretion through delegation of this authority by the President, may refuse to extradite a relator despite a judicial determination that extradition would be compatible with the terms of the applicable treaty." *Id.* at 1017.

The rule of non-inquiry bars consideration of Mendoza Perez's contentions regarding his treatment upon extradition, and application of a humanitarian exception is unwarranted. *Prasoprat*, 421 F.3d at 1016 n. 5 ("[T]he rule of non-inquiry does not prevent an extraditee who fears torture upon surrender to the requesting government from petitioning for habeas corpus review of the Secretary of State's decision to extradite him.").

Mendoza Perez relies on dicta in a Second Circuit case arguing that this Court could create a humanitarian exception. *Gallina v. Fraser*, 278 F.2d 77, 79 (2nd Cir. 1960), stated in dicta:

> "We can imagine situations where the relator, upon extradition, would be subject to procedures or punishment so antipathetic to a federal court's sense of decency as to require reexamination of [the general principle upholding extradition]."

*Id.* at 79.

In light of Ninth Circuit authority expressly holding contrary, this Court will not evaluate the *Gallina* case.

### FINDINGS AND CERTIFICATION OF EXTRADITABILITY

For the reasons discussed above, the Court grants Mexico's request for the extradition of Elias Mendoza Perez and makes the following findings and conclusions in support of this Certification:

10

1. This Court has jurisdiction over the proceedings;

2. This Court has jurisdiction over Elias Mendoza Perez;

3. There is a valid extradition treaty between the United States and the Government of Mexico, and the treaty is in full force and effect;

4. The offense of Homicide is an extraditable offense consisting of conduct considered to be criminal in both the United States and Mexico, and which is punishable by deprivation of liberty for a period of more than one year.

5. Mendoza Perez is sought for offense for which the extradition treaty permits extradition.

6. There is probable cause to believe that Mendoza Perez, the same person identify in the extradition request from the Government of Mexico, committed the offense for which extradition is sought.

The Court HEREBY CERTIFIES the above findings to the Secretary of State, pursuant to 18 U.S.C. § 3184.

IT IS HEREBY ORDERED, that a certified copy of this Certification of Extraditability be delivered by the Clerk to the Assistant United States Attorney assigned to this case for transmission to the Secretary of State.

IT IS FURTHER ORDERED that Elias Mendoza Perez be committed to the custody of the United States Marshal for this District pending final disposition of this matter by the Secretary of State and surrender to designated agents of the Government of Mexico, at which time the extraditee Elias Mendoza Perez will be transferred to the agents of the requesting state for return to Mexico.

IT IS SO ORDERED.

Dated: __**March 10, 2016**__              /s/ *Barbara A. McAuliffe*
                                                                    UNITED STATES MAGISTRATE JUDGE

11